Jennifer A. Kearns (SBN 125588)
**DUANE MORRIS LLP**
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619-774-2200
Email: jkearns@duanemorris.com

Diane J. Kim (SBN 329700)
**DUANE MORRIS LLP**
One Market, Spear Tower, Suite 2200
San Francisco, CA 94105-1127
Telephone: 415-957-3000
Email: djkim@duanemorris.com

Attorneys for Plaintiff
Speedmark Transportation, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

SPEEDMARK TRANSPORTATION, INC., a New York corporation,

          Plaintiff,

      v.

TOMMY DUONG, HECNY BROKERAGE SERVICES, INC., AND HECNY TRANSPORTATION, INC.

          Defendants.

Case No.  2:23-cv-2027

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR (1) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT; (2) VIOLATION OF DEFEND TRADE SECRETS ACT; (3) MISAPPROPRIATION OF TRADE SECRETS; (4) MISAPPROPRIATION OF TRADE SECRETS UNDER COMPUTER DATA ACCESS AND FRAUD ACT; (5) INTENTIONAL INTERFERENCE WITH CONTRACT; (6) BREACH OF CONTRACT; (7) BREACH OF DUTY OF LOYALTY; (8) UNFAIR BUSINESS COMPETITIVE PRACTICES; (9) THEFT OF CORPORATE OPPORTUNITIES; AND (10) CONVERSION AND DESTRUCTION OF PROPERTY**

**PARTIES**

1.     Plaintiff Speedmark Transportation, Inc. ("Speedmark") is a New York corporation with offices in Los Angeles and New York City, Chicago, Boston, Seattle, Atlanta and Dallas.  Speedmark's U.S. headquarters are located in Burlingame, California.

2.     Tommy Duong ("Duong") is an individual residing in Alhambra, California, who, until his resignation from Speedmark, worked in Speedmark's Los Angeles office in Torrance, California.

3.     Hecny Brokerage Services, Inc., and Hecny Transportation, Inc. (together "Hecny"), are corporations organized under the laws of the State of California.  Their principal places of business are at 19550 S. Dominguez Hills Drive, Rancho Dominguez, California 90220.

**JURISDICTION AND VENUE**

4.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this Complaint includes claims for Duong's violation of federal statutes, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832, *et seq*. The Court also has supplemental jurisdiction over Speedmark's state law claims pursuant to 28 U.S.C. § 1367.

**BACKGROUND**

5.     Speedmark is a provider of secure transportation services for industries worldwide, and offers air, ocean, and third-party logistics services. Speedmark has about seventy employees.

6.     Speedmark employed Duong since August 21, 2000, when Duong was eighteen years old, until Duong resigned from Speedmark on January 31, 2023. Prior to his employment with Speedmark, Duong did not have any prior experience in the transportation logistics and services industry and did not have contacts with any transportation services customer. As a result, everything that

Duong knows about the transportation and logistics services industry, including all of his contacts with and knowledge of customers and vendors, has been developed through Speedmark's investment in him as a trusted employee.

7. Throughout the course of his employment, Duong held many titles. On April 16, 2021, Duong became the Assistant General Manager, and on January 19, 2022, Duong became the de jure and de facto head and senior member of Speedmark's Los Angeles office ("Speedmark/LAX"). By the time he resigned on January 31, 2023, he was a senior member of Speedmark's USA team and he was the face of Speedmark /LAX for Speedmark's customers and potential customers.

8. In Duong's most recent employment agreement as Assistant General Manager for Speedmark/LAX dated April 16, 2021 ("Employment Agreement"), Duong agreed that he would not (i) disclose or furnish to any person, corporation or other entity, or use in his own or any other person's business, any confidential information received from Speedmark; (ii) utilize any such confidential information for the gain, advantage, or profit of anyone other than Speedmark; or (iii) take advantage of any business opportunity which, because of confidential information obtained as a result of his employment with Speedmark, he knew Speedmark was considering.

9. Duong agreed that during the term of his employment with Speedmark, he would not engage in any work, paid or unpaid, that creates an actual conflict of interest with Speedmark.

10. Duong agreed that at the time of leaving employment with Speedmark, he would deliver to Speedmark all records, data, notes, reports, proposals, lists, correspondence and other documents and property belonging to Speedmark or relating to Speedmark.

11. Duong agreed that Speedmark would suffer irreparable and continuing damage if he were to breach his contractual obligations regarding

Speedmark's confidential information and he agreed that Speedmark would be entitled to injunctive relief to remedy that breach.

12.    Speedmark considered Duong to be a high-level and trusted employee, and because Speedmark relied on the covenants of the Employment Agreement to which Duong agreed to be bound, Speedmark granted him access to its confidential information about its customers, entrusted him to supervise its employees at Speedmark/LAX, and asked him to act as the sole point of contact for customer rate requests from existing and potential customers at Speedmark/LAX.

13.    From January 19, 2022, until his resignation on January 31, 2023, Duong was primarily responsible for maintaining Speedmark's customer list and Speedmark's customer relationships in the area serviced by Speedmark/LAX, selling the services of Speedmark to prospective customers, and following through on rate requests to existing and prospective customers. When working with a Speedmark customer or a prospective customer, Duong was typically the only person at Speedmark/LAX who had knowledge of the jobs Speedmark was seeking to obtain from the customer or prospective customer.  Until an invoice was completed on any particular job for a customer, Duong was the one person in Speedmark/LAX who knew the customer's needs, budget, shipping preferences, and other critical details.  It was Duong's responsibility to maintain and increase existing customer relationships and to induce the existing customers and prospective customers to work with Speedmark for their global transportation needs.   Duong kept information concerning the jobs Speedmark/LAX was servicing and seeking to obtain from customers and prospective customers in local storage on the Speedmark computer assigned to him.

14.    Duong was also responsible for arranging transportation services through the Los Angeles service area for jobs originating in other Speedmark offices.  In that capacity, Duong had sole responsibility for pricing those jobs and

retained all of the information necessary to price those jobs in local storage on the Speedmark computer assigned to him.

15. On January 17, 2023, Duong advised Speedmark that he would quit his employment with Speedmark effective January 31, 2023.

16. Immediately after January 17, 2023, Duong refused to perform any of the transition duties that a departing office manager is obligated to perform to guarantee that Speedmark's customer relationships continue after the manager's departure, including conveying to Speedmark's management:

(i) Updated and detailed SOP of the top 20 accounts, including customer contact information, rates, commitments, key lanes, and which LAX employee handles the account;

(ii) Price quotations or RFQs in motion or that will be released soon; and

(iii) Lists of key Speedmark/LAX vendors, import and export, including contact person, email address and phone number.

17. Instead, Duong accessed his Speedmark office computer and initiated a "factory reset," thereby intentionally deleting all of Speedmark's data stored on that computer, including Speedmark's unique information regarding current business with Speedmark's customers and prospective customers and any responses to rate requests that have gone out to a current or prospective customer.

18. In order to cause the utmost damage to Speedmark's ability to continue to service its customers and to compete for new jobs from existing and prospective customer, Duong then accessed the Shared Drive of the Speedmark/LAX office and deleted all of the files memorializing job quotations made by Speedmark/LAX.

19. Upon information and belief, Duong, in the months prior to his departure, increased the price of jobs originating in other Speedmark offices, thereby increasing, for his own benefit, the profit of those jobs for

Speedmark/LAX and decreasing the competitiveness of Speedmark's other offices that had originated those jobs.

20.     Upon information and belief, Duong, acting in his capacity as head of the Speedmark/LAX and intending to disrupt Speedmark's relationships with the other employees in the Los Angeles office, advised Speedmark's employees at Speedmark/LAX that they would be entitled to higher salaries and other compensation from Speedmark after his departure.

21.     Before his resignation on January 31, 2023, and while receiving payment from Speedmark, Duong signed an employment contract with Hecny, a competing transportation services company.

22.     Demonstrating its awareness of the fact that Duong, as an employee of Speedmark, would be privy to Speedmark's trade secrets and confidential information, on or before January 17, 2023, while Duong was still employed by and paid by Speedmark, Hecny directed Duong to execute, as an "EMPLOYEE" of Hecny, Hecny's "Trade Secrets and Confidentiality Agreement."

23.     Duong, acknowledging that as an employee of Speedmark he had access to Speedmark's trade secrets and confidential information, signed Hecny's "Trade Secrets and Confidentiality Agreement" in his capacity as an "employee" of Hecny on January 17, 2023, while he was still employed by Speedmark, paid by Speedmark, and had access to Speedmark's trade secrets and confidential information.

24.     Hecny competes directly with Speedmark for the same business from the same customers and potential customers.

25.     Now, Duong, aided by Hecny, is using his knowledge of Speedmark's confidential information, including Speedmark's open price quotations, confidential pricing and service information, and client needs, to steal customers and business opportunities from Speedmark to benefit himself and Hecny, Duong's new employer.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

26.     Since Duong left Speedmark and began to work for Hecny, Speedmark/LAX has had fewer price quotations close year-to-date than it did this time last year, and Speedmark has lost certain longtime customers who informed Speedmark that they were moving their business to Hecny.

27.     Thanks to Duong's disloyalty, his malicious misuse and/or destruction of Speedmark's confidential information, and his inducement of certain former and prospective customers to contract with Hecny rather than Speedmark, Speedmark has been and will be irreparably injured. Duong must be enjoined.

28.     With Duong's assistance and, upon information and belief, using Speedmark's confidential information, Hecny is now using Speedmark's confidential information to compete directly with Speedmark for the same pool of existing and potential customers.

## CONSPIRACY TO COMMIT WRONGFUL ACTS

29.     Speedmark is informed and believes, and on that basis alleges, that the Defendants were engaged in a civil conspiracy to commit the wrongful acts alleged herein.   Defendants are an integral part of the overall plan to misappropriate certain confidential information belonging to Speedmark, to interfere with Speedmark's existing contracts and prospective commercial relationships, and to engage in acts of unfair business competition to promote and advance their competitive enterprise and to injure Speedmark as alleged herein.

30.     Speedmark is informed and believes, and on that basis alleges, that the Defendants acted as agents of one another in furtherance of their joint plan to misappropriate Speedmark's confidential information, to interfere with Speedmark's existing contracts and prospective commercial relationships, and to engage in acts of unfair business competition to promote and advance their competitive enterprise and to injure Speedmark as alleged herein.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
DM1\13906682.9

31. Indeed, when Duong approached Speedmark's current and prospective customers and induced them to enter into a transportation logistics and services relationship with Hecny instead of with Speedmark, Hecny did not stop Duong from doing so and failed to advise Speedmark that Duong was approaching Speedmark's current and prospective customers.

32. The acts and practices described in the causes of action alleged below constitute wrongful conduct on the part of the Defendants, and each of them, intended by the Defendants to further their conspiratorial ends and to injure Speedmark as therein alleged.

### FIRST CAUSE OF ACTION
**Computer Fraud and Abuse Act, 18 U.S.C. § 1030.**
**(Against Defendant Duong)**

33. Speedmark incorporates by reference all preceding paragraphs as if fully set forth herein.

34. Duong acquired access to and knowledge of Speedmark's confidential information, including its open price quotations, through his employment with Speedmark.

35. The Speedmark computer assigned to Duong contained unique information regarding Speedmark's open price quotations, current customer information, customer needs, transportation services, service pricing, current needs of prospective customers, and notes and memoranda on current and prospective customer needs, services, and pricing. The Speedmark computer assigned to Duong also contained unique copies of emails between Duong and the decision-making individual at Speedmark's customer or prospective customer covering a wide range of business issues essential to Speedmark.

36. Once a customer or prospective customer had accepted a price quotation from Speedmark/LAX, information concerning open price quotations

also was stored on the Speedmark/LAX Shared Drive so that other employees in that office could work that job.

37.    On January 17, 2023, Duong signed an employment agreement with Speedmark's competitor, Hecny.  Duong hid this fact from Speedmark.

38.    Between January 17 and January 23, 2023, Duong continued to report to work at Speedmark's Los Angeles office, where he continued to have access to Speedmark's confidential and proprietary data, including the unique data stored on the computer assigned to him and the data on the Speedmark/LAX Shared Drive.   Upon information and belief, Duong accessed Speedmark's confidential and proprietary data during this time for purposes other than Duong's performance of his job duties for Speedmark.

39.    Between January 17 and January 23, 2023, without authorization or consent from Speedmark, Duong willfully and intentionally conducted a factory reset on the Speedmark computer assigned to him – thereby deleting all files, including any notes and memoranda on Speedmark's responses to rate requests, customer account information, and current and prospective customer notes.

40.    Between January 17 and January 23, 2023, without authorization or consent from Speedmark, Duong willfully and intentionally deleted from the Speedmark/LAX Shared Drive all of the files containing Speedmark's open price quotations.

41.    Speedmark was not able to restore the Shared Drive data relating to the period prior after June 2022.  All of the data stored on the Shared Drive that related to open price quotations from June 2022 to the date of Duong's departure from Speedmark was deleted and cannot be recovered.

42.    Upon information and belief, prior to deleting Speedmark's proprietary and confidential information, Duong copied information related to Speedmark's current customers and prospective customers to locations outside of Speedmark and/or to devices controlled by Duong.

9

43.     The information contained in the deleted files was necessary for Speedmark to be able to close on certain rate requests and job orders with existing and prospective customers, to effectively and profitably service Speedmark's existing customers, and to respond to numerous weekly price quotations and spot rate requests.

44.     Speedmark has not been able to recover its files, which Duong intentionally and willfully deleted.

45.     Consequently, Speedmark lost at least $5,000 worth of its investment in the now deleted and unrecoverable files, and has lost far in excess of $5,000 in profits on services it would have rendered to its current and/or prospective customers had Duong not made it impossible for Speedmark to compete fairly for those jobs.

46.     Speedmark has no adequate remedy at law for the irreparable injuries currently being suffered in that Duong will continue to misappropriate and use the confidential information Speedmark invested in, but no longer possesses, to his and Hecny's benefit.

47.     Accordingly, Speedmark now seeks a temporary restraining order and preliminary and permanent injunction against Duong.

## SECOND CAUSE OF ACTION
**Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1832.**
**(Against Defendant Duong)**

48.     Speedmark incorporates by reference all preceding paragraphs as if fully set forth herein.

49.     Through his employment with Speedmark, Duong acquired access to and knowledge of Speedmark's trade secrets, which include Speedmark's customer list and service pricing.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DM1\13906682.9

50. The trade secret information Speedmark sought to protect and the related transportation services Speedmark sought to render, were used in, and intended to be used for, interstate commerce purposes.

51. The information relating to Speedmark's open price quotations, customer list, types of transportation services, and other notes and memoranda on confidential customer-specific services and needs provides independent economic value by not being available to the general public. Such information could not be originated by another party and is thus Speedmark's trade secret.

52. Speedmark has taken reasonable measures to maintain the secrecy of its trade secret information throughout Duong's employment, and communicated such trade secret information to Duong in confidence as reflected in the clauses in Duong's Employment Agreement.

53. Competitors, like Hecny, could profit from the use and disclosure of Speedmark's trade secret information.

54. Duong misappropriated Speedmark's trade secrets by using and disclosing, and/or likely having used and/or disclosed, Speedmark's trade secrets without Speedmark's consent, as indicated by: (a) the decrease in closed jobs this year in comparison to prior years; (b) the loss of longtime customers; and (b) the number of customers who have gone to Hecny over Speedmark since Duong's departure. Indeed, six or more customers have informed Speedmark that they would transfer their accounts from Speedmark to Hecny.

55. Upon information and belief, Duong unilaterally, and without Speedmark's authorization: (a) inflated the pricing Speedmark offered to certain customers of Speedmark to be able to offer lower pricing at Hecny; (b) did not actively close on certain rate requests while at Speedmark with the intent to close on such open jobs while at Hecny; and (c) pursued the same open jobs while at Hecny.

56.     Duong engaged in the foregoing conduct intending or knowing that it would injure and/or harm Speedmark.

57.     Duong's conduct was willful and malicious and undertaken with reckless indifference to Speedmark's rights. Speedmark is therefore entitled to punitive damages.

58.     Because of Duong's misappropriation and/or threatened misappropriation of Speedmark's trade secrets, Speedmark faces immediate and irreparable harm and has been injured. Furthermore, Speedmark has no adequate remedy at law for the irreparable injuries currently being suffered in that Duong will continue to misappropriate and use the trade secrets belonging to Speedmark.

59.     For the foregoing reasons, Speedmark seeks a temporary restraining order, and a preliminary and permanent injunction against Duong from using the confidential trade secret information he misappropriated.

### THIRD CAUSE OF ACTION
**Misappropriation of Trade Secrets**
**Pursuant to California Civil Code § 3426 *et seq.***
**(Against All Defendants)**

60.     Speedmark incorporates by reference all preceding paragraphs as if fully set forth herein.

61.     Speedmark was in possession of trade secrets and other proprietary information, as defined by California Civil Code § 3426.1, et seq., including confidential price quotations to certain prospective customers, pricing and service information, and information on prospective clients' needs, (hereinafter "Proprietary Information").   Some of the Proprietary Information included identities of current and prospective clients who had contacted Speedmark.

62.     Speedmark's trade secrets and Proprietary Information have economic value in that information about clients' or prospective clients' transportation needs enabled Speedmark to offer competitive proposals and, for clients with repeat business, to meet such clients' known requirements and

expectations. The Proprietary Information also includes Speedmark's confidential cost and pricing information, which is essential to its ability to compete in the market against its competitors like Hecny. This information was developed by Speedmark or at Speedmark's direction.

63. Speedmark made reasonable efforts to ensure that its Proprietary Information remained secret by requiring those who had access to this information to retain it as confidential. Specifically, Speedmark required Duong and all other employees having access to the Proprietary Information to agree in writing to keep that information confidential and made reasonable efforts to ensure that Duong understood the confidential nature of the Proprietary Information when he signed the Employment Agreement.

64. Despite Speedmark's efforts, Duong used the Proprietary Information to his personal and professional benefit by taking the Proprietary Information with him and disclosing the Proprietary Information to Hecny, Speedmark's direct competitor.

65. Furthermore, Duong and Hecny knew that the Proprietary Information was confidential by its very nature, in that custom and practice dictated that it would be valuable to competitors, enabling them to compete unfairly with Speedmark.

66. Duong misappropriated Speedmark's Proprietary Information in violation of California Civil Code § 3426.1(b)(2). Duong's actions include taking trade secrets and confidential information, including confidential pricing and service information, to steal customers and business opportunities from Speedmark for the benefit of Hecny.

67. As a proximate result of this unauthorized taking and use of Speedmark's Proprietary Information, Speedmark has suffered actual damages through the loss of clients who later transferred their transportation needs from Speedmark to Hecny, and the loss of business from prospective clients who

Duong contacted using Speedmark's Proprietary Information. As a further proximate result of the misappropriation, Hecny was unjustly enriched in that Hecny did not have to invest in costly sales, marketing and advertising activities in order to identity and solicit these clients and prospective clients.

68. Speedmark is informed and believes, and on that basis alleges, that the acts of Duong and Hecny were willful, malicious and oppressive in that Defendants were fully aware of the value of Speedmark's Proprietary Information and used the Proprietary Information they wrongfully misappropriated from Speedmark to actively solicit clients in a deliberate attempt to injure Speedmark and provide themselves with an unfair advantage in their competitive venture. Speedmark is therefore entitled to punitive damages.

69. Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will continue to cause irreparable harm to Speedmark's business in that Speedmark will continue to lose customers and prospects, both essential to the continued operation of Speedmark's business. Speedmark has no adequate remedy at law for the irreparable injuries currently being suffered in that Defendants will continue to misappropriate and use the trade secrets belonging to Speedmark.

70. As a proximate result of acts as alleged herein, Speedmark has suffered damages, and will continue to suffer damages, unless Defendants are permanently enjoined from using the confidential trade secret information they misappropriated. Speedmark is also entitled to recover the amount of Defendants' unjust enrichment obtained through the misappropriation and/or use of Speedmark's Proprietary Information that is not taken into account in computing damages for Speedmark's actual loss.

71. Speedmark is informed and believes, and on that basis alleges, that Defendants' conduct was, and is, malicious, fraudulent, deliberate and willful. Plaintiff is therefore entitled to recover from Defendants exemplary damages in

the amount of twice the total damages or reasonable royalty awarded, pursuant to California Civil Code §3426.3.

72.    Speedmark is also entitled to an award of attorneys' fees pursuant to California Civil Code § 3426.4.

**FOURTH CAUSE OF ACTION**
**Misappropriation of Trade Secrets**
**Pursuant to the Comprehensive Computer Data Access and Fraud Act**
**California Penal Code § 502 *et seq.***
**(Against All Defendants)**

73.    Speedmark incorporates by reference all preceding paragraphs as if fully set forth herein.

74.    Speedmark had confidential Proprietary Information on the computer assigned to Duong, including responses to open customer rate requests, customer information, service pricing, current needs of prospective customers, and notes and memoranda on current and prospective customer needs, services, and pricing.

75.    On or before January 23, 2023, Duong knowingly and intentionally accessed Speedmark's computers for purposes other than in connection with Duong's job duties for Speedmark.

76.    On or before January 23, 2023, Duong willfully and maliciously conducted a factory reset on the Speedmark computer assigned to him without Speedmark's authorization or consent and thus deleted Speedmark's confidential Proprietary Information.

77.    On or before January 23, 2023, Duong willfully and maliciously deleted the files reflecting open price quotations that were stored on the Shared Drive in Speedmark's Los Angeles office.

78.    The information contained in the deleted files was necessary for Speedmark to be able to close on certain open price quotations with existing and prospective customers, to effectively and profitably service Speedmark's existing

customers, and to respond to numerous weekly price quotations and spot rate requests.

79.     Speedmark has not been able to recover its files, which Duong intentionally and willfully deleted through the factory reset.

80.     Consequently, Speedmark lost at least $5,000 worth of its investment in the now deleted and unrecoverable files, and will likely lose at least $5,000 worth of profits in services it would have rendered to its current and/or prospective customers.

81.     Speedmark has no adequate remedy at law for the irreparable injuries currently being suffered in that Duong will continue to misappropriate and use the trade secrets and proprietary information belonging to Speedmark that Speedmark can no longer access.

82.     Accordingly, Speedmark now seeks a temporary restraining order and preliminary and permanent injunction against Duong

### FIFTH CAUSE OF ACTION
**Intentional Interference with Plaintiff's**
**Customer Contracts and Prospective Economic Advantage**
**(Against All Defendants)**

83.     Speedmark incorporates by reference all preceding paragraphs as if fully set forth herein.

84.     Speedmark is informed and believes, and on that basis alleges, that Defendants used Speedmark's Proprietary Information, which Duong wrongfully misappropriated, and induced Speedmark's customers to terminate or modify their relationship with Speedmark and initiate or increase jobs with Hecny.

85.     Speedmark is informed and believes, and on that basis alleges, that Defendants used Speedmark's Proprietary Information, which Duong wrongfully misappropriated, and induced Speedmark's prospective customers to terminate their negotiations with Speedmark and enter into servicing agreements with Hecny.

DM1\13906682.9

86.   Speedmark's   customer   relationships   –   former,   current,   and prospective – are business opportunities created for and by Speedmark. Duong's relationship with Speedmark's customers – former, current, and prospective – were solely because of the business opportunities Speedmark created.

87.   Because of Duong's employment relationship with Speedmark and because Hecny hired Duong based on his employment history, experience, and relationship with Speedmark, Defendants had full knowledge of the relationships that existed between Speedmark and its current, former, and prospective clients. Duong also had full knowledge of certain potential clients or prospects who were in the process of engaging with Speedmark, which included knowledge of such potential clients' servicing needs.

88.   Duong   intentionally   interfered   with   Speedmark's   existing   and prospective relationships by failing to follow through with clients and prospects and by failing to take steps necessary to secure jobs from existing and prospective customers.

89.   Speedmark is also informed and believes, and on that basis alleges, that Duong induced Speedmark's existing clients to cease their bookings with Speedmark, and induced prospects who were ready to book jobs with Speedmark to refrain from doing so. Speedmark is informed and believes, and on that basis alleges, that Duong, to Hecny's benefit, solicited clients and prospects to move their business to Hecny instead.

90.   When Duong initiated the factory reset on Speedmark's computer for the purpose of deleting all files, notes, and memoranda relating to current and prospective customer contracts, he intentionally interfered with the relationship between the Speedmark and its current, former, and prospective clients.

91.   Speedmark is informed and believes, and on that basis alleges, that Duong continued to contact Speedmark's clients after resigning from Speedmark on January 31, 2023.

92.     Speedmark is further informed and believes, and on that basis alleges, that Hecny knew that Duong's incoming clients were Speedmark clients, but did not do anything to inform Speedmark of the misappropriation, and instead sought to benefit from it in silence.

93.     Speedmark has suffered economic damages as a result of Defendants' conduct as alleged above, in the form of lost revenues.

94.     Speedmark is informed and believes, and on that basis alleges, that the acts of Defendants were willful, fraudulent, malicious and oppressive. Speedmark is therefore entitled to punitive damages.

95.     Defendants' wrongful conduct of interfering with Speedmark's relationships with its clients and prospects, unless and until enjoined and restrained by order of this court, will continue to cause irreparable harm to Speedmark's business in that Speedmark will continue to lose customers and prospects, both essential to the continued operation of Plaintiff's business. Speedmark has no adequate remedy at law for the irreparable injuries currently being suffered in that Defendants will continue to interfere with Speedmark's client relationships, contracts and prospective economic advantage.

### SIXTH CAUSE OF ACTION
**Breach of Contract**
**(Against Defendant Duong)**

96.     Speedmark incorporates by reference all preceding paragraphs as if fully set forth herein.

97.     Duong signed the Employment Agreement with Speedmark.

98.     In the Employment Agreement, Duong agreed that he would not (i) disclose or furnish to any person, corporation or other entity, or use in his own or any other person's business, any confidential information received from Speedmark; (ii) utilize any such confidential information for the gain, advantage, or profit of anyone other than Speedmark; or (iii) take advantage of any business

opportunity which, because of confidential information obtained as a result of his employment with Speedmark, he knew Speedmark was considering.

99. Duong breached the Employment Agreement when he used Speedmark's confidential, open price quotations intentionally sabotaged those open price quotations by opting to not pursue them, and then later deleting, by way of a factory reset, any information on those open price quotations.

100. In the Employment Agreement, Duong also agreed that during the term of his employment with Speedmark, he would not engage in any work, paid or unpaid, that creates an actual conflict of interest with Speedmark.

101. Duong breached the Employment Agreement when he signed an employment agreement with Hecny, Speedmark's direct competitor, while still employed by, and receiving payment from, Speedmark.

102. In the Employment Agreement, Duong agreed that at the time of leaving employment with Speedmark, he would deliver to Speedmark all records, data, notes, reports, proposals, lists, correspondence and other documents and property belonging to Speedmark or relating to Speedmark.

103. Following his resignation, Duong breached the Employment Agreement when he failed to deliver to Speedmark Speedmark's records, data, notes, reports, proposals, lists, correspondence, and other documents. Instead, Duong intentionally deleted the very records that he was obligated to deliver to Speedmark.

104. Duong agreed that Speedmark would suffer irreparable and continuing damage if he were to breach his contractual obligations regarding Speedmark's confidential information and he agreed that Speedmark would be entitled to injunctive relief to remedy that breach.

105. As a result of Duong's breach, Speedmark suffered and will suffer damages in an amount to be proven at trial.

106.   For the foregoing reasons, Speedmark is entitled to recover he damages it has suffered as a result of Duong's breach of the Employment Agreement.

## SEVENTH CAUSE OF ACTION
### Breach of Duty of Loyalty
### (Against Defendant Duong)

107.   Speedmark incorporates by reference all preceding paragraphs as if fully set forth herein.

108.   From the start of his employment through January 31, 2023, the last day of Duong's employment with Speedmark, Duong owed a duty of loyalty to Speedmark.

109.   Duong breached that duty of loyalty by: (a) being employed by a competing company, Hecny, starting on January 17, 2023; (b) by destroying Speedmark's Proprietary Information by deleting unique data stored on Speedmark's computers; (c) by misleading Speedmark's Los Angeles employees about a pending pay increase when Duong had no authority to do so; (d) by failing to provide proper responses to rate requests in the months prior to his departure from Speedmark; and (e) by delaying responses to rate requests so as to be able to respond to those requests after his employment with Hecny commenced.

110.   From January 17, 2023 through January 31, 2023, Speedmark is informed and believes, and on that basis alleges, that Duong prioritized Hecny's interest over Speedmark's by becoming employed by Hecny while simultaneously being employed by Speedmark.

111.   Speedmark believes, and on that basis alleges, Duong chose to sabotage certain rate requests by not pursuing them and then deleting any relevant information on them from Speedmark's computer, in order to intentionally harm Speedmark and to benefit his new employer, Hecny.

DM1\13906682.9

112.   Speedmark suffered economic damages as a result of Duong's breach of his duty of loyalty in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**Unfair Competition B&PC §17200 *et seq*.**
**(Against All Defendants)**

113.   Speedmark incorporates by reference all preceding paragraphs as if fully set forth herein.

114.   In performing the acts alleged above, and other acts, Defendants, and each of them, violated the California Unfair Competition Law, Business & Professions Code §17200 *et seq*.  by engaging in multiple instances of unlawful and unfair business acts and practices.

115.   Duong engaged in unlawful and unfair business acts and practices by (a) being employed by a competing company, Hecny, starting on January 17, 2023; (b) by destroying Speedmark's Proprietary Information by deleting data on Speedmark's computers; (c) by communicating false information to Speedmark's other employees regarding a pending pay increase; (d) by failing to provide proper responses to rate requests in the months prior to his departure from Speedmark; and (e) by delaying responses to rate requests so as to be able to respond to those requests after his employment with Hecny commenced.

116.  In doing so, Duong misappropriated Speedmark's Proprietary Information and prioritized the interests of Hecny's over the interests of Speedmark's while still being employed by Speedmark.

117.   Hecny engaged in unlawful and unfair business acts and practices by permissively accepting misappropriated Proprietary Information for their own competitive advantage against Speedmark.

118.   Defendants used the Proprietary Information belonging to Speedmark and solicited existing and potential clients on behalf of Hecny away from Speedmark.

DM1\13906682.9

119.  The unlawful and unfair business acts and practices alleged above have resulted in clients and prospective clients to cease doing business with Speedmark and instead to contract with Hecny.

120.  The above alleged specific injuries suffered by Plaintiff may be addressed through restitution and restitutionary disgorgement relief sought herein and are within the interests intended to be protected by the unfair competition laws.

121.  Defendants' unlawful and unfair business practices set forth above will persist and/or recur unless and until an injunction is issued by this court.

### NINTH CAUSE OF ACTION
**Theft of Corporate Opportunities**
**(Against All Defendants)**

122.  Speedmark incorporates by reference all preceding paragraphs as if fully set forth herein.

123.  During the final months of his employment with Speedmark, Duong refrained from acting on business opportunities that belonged to Speedmark, with the intention of taking those opportunities for Hecny.

124.  Further, Speedmark is informed and believes, and on that basis alleges, that Defendants acted on business opportunities Duong refrained from pursuing while he was employed by Speedmark and has since pursued those opportunities on behalf of Hecny.

125.  Hecny knew that the clients Duong brought to Hecny were Speedmark's prospective clients that Speedmark was actively pursuing. Despite knowing that Duong was misappropriating certain business opportunities from Speedmark using Speedmark's Proprietary Information, Hecny did not intervene, passively accepted the new contracts, and knowingly economically benefitted from the misappropriation.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

126.   Speedmark has suffered economic damages because of Defendants' conduct as alleged above, in the form of lost revenues from said business opportunities. Meanwhile, Hecny has been unjustly enriched to the extent that any of the stolen business opportunities resulted in the contracting of other transportation services agreements with Speedmark's former, current, and/or prospective clients.

127.   Plaintiff is informed and believes, and on that basis alleges, that the acts of Defendants, were willful, fraudulent, malicious and oppressive.  Plaintiff is therefore entitled to punitive damages.

## TENTH CAUSE OF ACTION
### Conversion and Destruction of Property
### (Against Defendant Duong)

128.   Speedmark incorporates by reference all preceding paragraphs as if fully set forth herein.

129.   During his employment with Speedmark, Duong used Speedmark's computer system.  The contents of the system were the exclusive property of Speedmark.

130.   Around the time that Duong informed Speedmark of his resignation, Duong initiated a factory reset of one of the Speedmark computer assigned to him without Speedmark's consent or authorization. By doing so, Duong deleted Speedmark's Proprietary Information, including unique information relating to current and prospective client needs and open rate requests. Duong then intentionally and maliciously deleted all of the open quotations information stored on the Shared Drive in the Los Angeles office.

131.   Speedmark did not have access to the Proprietary Information that was stored on the computer that Duong intentionally deleted by initiating a factory reset.

132.   Duong's actions constitute a conversion of and destruction of property belonging to Plaintiff.

133.   As a result, Speedmark has suffered damages in an amount to be proven at trial.

134.   Speedmark is informed and believes, and on that basis alleges, that the acts of Duong were willful, fraudulent, malicious and oppressive.  Plaintiff is therefore entitled to punitive damages.

## PRAYER FOR RELIEF

### ON THE FIRST, SECOND, THIRD, FOURTH, FIFTH, AND EIGHTH CAUSES OF ACTION

135.   For damages in an amount to be proven at trial by jury, recovery of Defendants' unjust enrichment, and punitive damages including reasonable attorneys' fees and costs incurred in connection with this action.

### ON THE THIRD, FIFTH, SIXTH, EIGHTH, NINTH AND TENTH CAUSES OF ACTION

136.   Speedmark respectfully requests that this Court enter a restraining order and preliminary and permanent injunction against Duong and Hecny:

(a) Prohibiting Defendant Duong from:

 (i)   Using, copying, transferring, or otherwise disclosing Speedmark's Proprietary Information, trade secrets, and other confidential information;

 (ii)   Deleting or otherwise disposing of any data obtained by Duong from Speedmark;

(b) Compelling Defendant Duong to turnover to Speedmark any data or property obtained by Duong from Speedmark;

(c) Prohibiting Defendant Hecny from:

(i)    Using any of Speedmark's Proprietary Information, trade secrets, and other confidential information learned of through Defendant Duong; or

(ii)    Allowing Duong to solicit or engage any of Speedmark's former, current, or prospective clients.

(d) Granting such other and further relief as the Court determines is necessary to protect Speedmark's rights.

Dated: March 17, 2023          **DUANE MORRIS LLP**

By: _____
      Jennifer A. Kearns
      Diane J. Kim
      Attorneys for Plaintiff
      Speedmark Transportation Services, Inc.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
DM1\13906682.9